NANCY K. WAKUYA and TED T. WAKUYA, Plaintiffs-Appellants, *v.* OAHU PLUMBING & SHEET METAL, LTD., dba SEN COMPANY, Defendant and Third-Party Plaintiff-Appellee, *v.* SECURITY CORPORATION and KUMAHIRA SAFE COMPANY, Third-Party Defendants-Appellees, and CITY BANK, Third-Party Defendant

NO. 7341

CIVIL NO. 49492

SEPTEMBER 3, 1981

HAYASHI, C.J., PADGETT AND BURNS, JJ.

## OPINION OF THE COURT BY PADGETT, J.

This is an appeal from a judgment below in favor of the defendants-appellees and against the plaintiffs-appellants. With respect to Appellees Security Corporation (hereinafter "Security") and Kumahira Safe Company (hereinafter "Kumahira"), the judgment was based upon an order dismissing the complaint entered pursuant to motions to dismiss made by those parties. With respect to Appellee Oahu Plumbing & Sheet Metal, Ltd. (hereinafter "Oahu"), the judgment was based upon a jury verdict in favor of that appellee.

The issues raised are whether the court below properly dismissed the complaint as to Appellees Security and Kumahira because appellants delayed some thirteen-and-a-half months from the time they stipulated that those parties could be joined as third-party defendants in identifying them as John Doe defendants in the complaint. With respect to the jury verdict, the question is whether the court below correctly refused a *res ipsa loquitur* instruction. We hold that the court below erred on both points and, consequently, reverse.

This action was commenced by the appellants, Wakuyas, because Mrs. Wakuya was injured on the 4th of October, 1974 when the handle came off of the vault door in the City Bank branch at Kailua, Oahu, as she was attempting to open it in the course and scope of her duties, resulting in her falling on the floor and sustaining personal injuries. The handle and door in question had been manufactured by Kumahira, distributed by Security, and installed by Oahu, which did periodic maintenance, twice a year, on the whole mechanism under a contract with City Bank. Oahu's last servicing of the mechanism prior to the accident was in March, 1974. The handle on the vault's door had to be rotated to the stop position and then the door pulled open. The handle was attached to a shaft which protruded from the door and actuated the opening mechanism. The

attachment was by an Allen screw which was screwed into a hole in the handle and up against the shaft. Appellant Mrs. Wakuya testified that on the day in question she was attempting to open the door with both hands, using the usual amount of gentle force required, when the handle suddenly came off and she fell or flew backwards some ten feet with the handle flying out of her hands. Oahu's employee in charge of servicing the mechanism in question testified that on the March service, as previously, he checked the screw and it was tight.

The service contract in question covers a number of bank branches and a number of mechanisms. It provides for service twice a year and states that Oahu, under the name Sen Company,

> will ... inspect and maintain in good operating condition the equipment ... by performing periodic preventive maintenance inspections as specified. ...

> The preventive maintenance service will include inspection, cleaning, adjustment and lubrication, if required, of all electrical and mechanical components. Replacement of necessary parts will be accomplished during the performance of preventive maintenance inspections and will be charged to the subscriber at current list prices. Services required to repair equipment for damages incurred by other than fair wear and tear will be charged to the subscriber utilizing current hourly and expense billing rates.

The contract further provides,

> It is understood and agreed between the parties that SEN COMPANY is not an insurer and that the payments to be made by the subscriber shall be solely for the services hereinbefore described on the equipment enumerated on Schedule A, and that SEN COMPANY assumes no liability whatsoever for the failure of the equipment to perform the service for which it is intended or for any losses of whatsoever nature which may result from any malfunction or alleged malfunction of the equipment.

The complaint was filed on September 24, 1976, some ten days prior to the running of the statute of limitations. Pursuant to Rule 17(d), Hawaii Rules of Civil Procedure (HRCP), unidentified defendants, commonly known as John Does, were joined; and it was

alleged in the complaint,

> Defendants, and each of them, manufactured, sold, installed or
> serviced a certain heavy door to the safe or vault located in City
> Bank aforesaid in such a negligent or defective manner as to
> cause injury to the Plaintiff as hereinafter set forth.

On December 30, 1976, after the statute of limitations had run, plaintiffs' counsel executed a stipulation providing for the filing of a third-party complaint by Oahu against the other two appellees. Nevertheless, although at that point the manufacturer and distributor of the safe in question had been clearly identified, no action was taken to amend the complaint or to identify them on the record as named defendants. Finally, on February 14, 1978, appellants filed documents identifying Kumahira and Security as two of the John Does; and an order dated February 13, 1978 was entered by the court making those two parties defendants and ordering service upon them. On April 17, 1978, Security filed a motion to dismiss

> On the ground that said Defendant is prejudiced as a matter of
> law by Plaintiffs' failure to identify it as a John Doe Defendant
> until 13 months after Security Corporation was made a Third-
> Party Defendant in the action, and because Security Corporation
> did not receive notice of the institution of the action within the
> Statute of Limitations, as required by Rule 15(c), H.R.C.P.

On April 20, 1978, Kumahira filed a motion to dismiss

> on the grounds that said defendant is prejudiced as a matter of
> law by plaintiffs' failure to identify [sic] as a John Doe defendant
> until 13 months after Kumahira Safe Company was made a
> third-party defendant in the action, and because Kumahira Safe
> Company did not receive notice of the institution of the action
> within the applicable statute of limitations, as required by Rule
> 15(c), Hawaii Rules of Civil Procedure.

The court below granted the motions and, thereafter, appellants proceeded to trial against Oahu on the theory of negligence. At the close of the trial, they requested instructions be given to the jury on the doctrine of *res ipsa loquitur*. The court below refused these instructions and the jury returned a verdict for Oahu. Judgment in favor of the appellees was then entered and this appeal followed.

In deciding the issue of whether the court below properly dismissed the action as to Security and Kumahira, we must consider the interactions and workings of three rules and one statute.

Rule 15(c), HRCP, provides:
Whenever the claim or defense asserted in amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by law for commencing the action against him, the party to be brought in by amendment (1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him.

Rule 17(d), HRCP, provides:
When it shall be necessary or proper to make a person a party defendant and it shall appear by affidavit of the attorney that the affiant has been unable to ascertain the name of the defendant or a part of his name or to ascertain his identity, the court may on motion with or without notice order the action to proceed against him, adding a description of his interest in the action and stating so much of his name as is known. The person intended shall thereupon be considered a defendant to the action and as sufficiently described for all purposes, including service of process.

Rule 28, Hawaii Rules of the Circuit Courts (HRCC) provides:
A diligent effort to effect service shall be made in all actions, and if no service be made within 6 months after an action has been filed then after notice of not less than 5 days the same may be dismissed.

Section 657-7.5, Hawaii Revised Statutes (HRS) provides:
When a defendant, against whom action has been timely brought, brings in a third-party defendant who is or may be liable to him or to the plaintiff for all or part of the plaintiff's claim against him, plaintiff within thirty days after the date of filing of the third-party defendant's answer, may assert against the third-party defendant any claim, arising out of the original transaction or occurrence that is also the subject matter of the third-party plaintiff's claim against the third-party defendant,

which would have been timely if the third-party defendant had been joined originally as a defendant, notwithstanding any statutory period of limitations otherwise applicable to plaintiff's claim. Nothing herein shall preclude the plaintiff from asserting any claim which he might have asserted without the benefit of this section.

We think it is obvious and well recognized that one of the primary purposes of Rule 17(d), HRCP, is to toll the statute of limitations with respect to parties who cannot be identified prior to the running thereof.

Unfortunately, Rule 17(d) is silent as to the mechanics to be followed when a John Doe's identity has been ascertained. Since the John Doe is a defendant and sufficiently identified for all purposes under the express provisions of Rule 17(d), HRCP, the identification and order for service is not an amendment changing a party, such as is dealt with in the second sentence of Rule 15(c), HRCP, nor an amendment adding a party, such as is dealt with in Rule 21, HRCP. Here the appellants filed a document entitled "Identification of John Doe Defendants", and affidavit of counsel in support thereof, and obtained from the court an ex parte "Order Identifying John Doe Defendants", which stated,

> IT IS HEREBY ORDERED that SECURITY CORPORATION and KUMAHIRA SAFE COMPANY be made party Defendants to this action, said party Defendants to be each served with a certified copy of the Motion to Proceed Against Unidentified Defendants, Affidavit Pursuant to Rule 17 of the Hawaii Rules of Civil Procedure, and Order, Complaint and Summons previously filed herein.

In the absence of any provision in the rules with respect to the mechanics of identifying the John Doe defendants on the record and making service upon them, the procedure followed here seems an acceptable one.

Appellees argue, however, that since the identification was in fact made in the third-party complaint which was filed and served, that then appellants were obliged to comply with the provisions of HRS § 657-7.5 and amend their complaint naming the third-party defendants as amended complaint defendants within 30 days after filing of the third-party complaint. This argument, however, ig-

nores the last sentence of that section which says,

> Nothing herein shall preclude the plaintiff from asserting any claim which he might have asserted without the benefit of this section.

Obviously, appellants would not as a matter of law be required to amend the complaint and identify the John Does within 30 days from the discovery of their identity had that identity been discovered in some manner other than by the filing of a third-party complaint. Thus, but for the existence of the statute, the question of the 30-day period would not have arisen, and plaintiffs would not be precluded from asserting their claim. We, therefore, hold as a matter of law that § 657-7.5, HRS, does not preclude the identification on the record of John Doe defendants after 30 days from the filing of a third-party complaint naming them.

Appellees also contend that HRCC, Rule 28, is applicable and that when appellants failed to identify the two John Does on the record within six months after learning of their identity, they violated Rule 28. That rule, however, is one dealing with diligent efforts to effect service. Until the John Does are identified as "defendants" on the record, service cannot be effected since the servicing officer has no idea of whom to serve. The six-month provision in Rule 28 commences to run when they are identified on the record, not before.

Were this a case in which some prejudice to Security and/or Kumahira by reason of the long delay was shown, our ruling today might well be different. Appellees moved, however, and the court below granted their motions upon the ground that the 13-month delay as a matter of law constituted prejudice. We cannot reach that conclusion.

We think the opinion in *Bagalay v. Lahaina Restoration Foundation*, 60 Haw. 125, 588 P.2d 416 (1978) is apposite here. In that case the court was dealing with a dismissal based upon a claimed failure to make a timely substitution with respect to a party who had died. The court stated:

> In the absence of a showing of undue prejudice to appellees in the two years and eight months time lapse between appellant's death and the motion for substitution, and in the light of the fact that counsel for appellant did not abandon the case but contin-

ued with pretrial proceedings while attempting to locate "heirs" in the Philippines, we find that the trial court abused its discretion in not permitting appellant to substitute appellant's administratrix in the case.

60 Haw. at 143.

As the court there noted, our supreme court has consistently taken the position that the rules of civil procedure are to be liberally construed to promote justice and has been reluctant to dismiss cases simply because of the passage of time where no prejudice has been shown. Here, Security and Kumahira received notice of the action and the claims by reason of the filing of the third-party complaint. That third-party complaint had attached to it, as Exhibit A, the complaint filed by the appellants. So they had notice of the claim of appellants from that time on. Indeed, Security had even filed a pretrial statement some days prior to its identification on the record.

Since one of the purposes of HRCP 17(d) was to toll the statute of limitations in situations where parties could not be identified at the time of the filing of the suit and before the running of the statute, and since no prejudice is shown by the delay in identifying Security and Kumahira on the record, we hold that the court below erred in dismissing the complaint as to those parties.

Security and Kumahira having been dismissed as party defendants, the case proceeded to trial against Oahu only. The jury found Oahu not to be negligent. The sole question raised on appeal in this respect is whether the court below erred in refusing to give a *res ipsa loquitur* instruction. The erroneous action of the court below in dismissing Security and Kumahira, of course, casts a pall over the subsequent trial because there is no way of knowing what the evidence might have been had the proper parties been before the court.

The doctrine of *res ipsa loquitur* is the subject of much controversy and confusion in various courts. Its application in Hawaii is spelled out in *Morgan v. Yamada*, 26 Haw. 17 (1921); *Ciacci v. Woolley*, 33 Haw. 247 (1934); and *Guanzon v. Kalamau*, 48 Haw. 330, 402 P.2d 289 (1965). As was said in *Morgan v. Yamada, supra,* at 24,

In the article on negligence in 20 R.C.L., p. 187, it is said: "More precisely the doctrine *res ipsa loquitur* asserts that whenever a thing that produced an injury is shown to have been under the control and management of the defendant and the occurrence is such that in the ordinary course of events does not happen if due

care has been exercised, the fact of the injury itself will be deemed to afford sufficient evidence to support a recovery in the absence of any explanation by the defendant tending to show that the injury was not due to his want of care.* * * The presumption of negligence herein considered is of course a rebuttable presumption. It imports merely that the plaintiff has made out a *prima facie* case which entitled him to a favorable finding unless the defendant introduces evidence to meet and offset its effect. And of course where all the facts attending the injury are disclosed by the evidence, and nothing is left to inference, no presumption can be indulged — the doctrine *res ipsa loquitur* has no application."

In *Ciacci v. Woolley, supra,* the court said at 258:

Adopting the language of *McCloskey v. Koplar* (Mo.), 46 S. W. (2d) 557, 560, with respect to the doctrine invoked as above: " *** the requirement that the instrumentality be under the management and control of the defendant does not mean, or is not limited to, actual physical control, but refers rather to the right of control at the time the negligence was committed."

Here, Oahu had the responsibility, by contract, for what is described therein as "preventive maintenance" of the instrumentality, including the vault door handle. Obviously, one of the purposes of the handle on the vault door was that it was to be used in opening the vault door. This required someone turning and then pulling on the handle. Obviously, such handles are not supposed to come off in the course of doors being opened in the absence of negligence, particularly where, as here, ordinary wear and tear on the mechanism is to be dealt with by "preventive maintenance" by Oahu.

The door was owned by City Bank and maintained by Oahu. The doctrine of *res ipsa loquitur* under such a situation can be applicable to the maintainer. *Bond v. Otis Elevator Co.,* 388 S.W.2d 681 (Tex. 1965). We think that any suggestion that the door might have come off because of possible tampering by unknown parties cannot eliminate the doctrine of *res ipsa loquitur* from the case. As the Supreme Court of Hawaii said in *Ciacci v. Woolley, supra,* at 259:

"We think this argument, unsustained as it is by any semblance of evidence or proof tending to show such interference with this pipe or cap, carries the possibilities in cases of this kind entirely

too far. To give it application would be to practically eliminate the doctrine of *res ipsa loquitur* from the law, since it would be difficult to imagine a case where the appliance causing the accident would be so immured as to make it impossible for any person but its owner or operator to have access to it."

At oral argument Oahu contended that it had introduced evidence that the reason for the door handle coming off was improper design and that under *Guanzon v. Kalamau, supra,* the presumption should vanish and the instruction was therefore properly refused. However, we find no such evidence in the record. No parts of the mechanism itself — handle, screw, or shaft — were introduced in evidence. How or why the handle came off is not explained by the evidence. The fact that the manufacturer subsequently ordered a modification by drilling a short distance into the shaft so that the screw could penetrate it does not of itself constitute evidence that defective design was the cause of the accident.

Appellees have also argued that based upon the distance appellant fell when the handle came off and the fact that the handle flew out of her hands at that point there is evidence of her contributory negligence. Given the fact that the handle came off unexpectedly as appellant was pulling on it with both hands, neither the distance she fell nor the fact that the handle flew out of her hands, is any evidence of excessive force. The court below, however, apparently agreed with this since it permitted contributory negligence to go to the jury over the objection of appellants. Appellant's own testimony was that she applied the same pressure on the morning in question as she had applied on the innumerable other times she had opened the door. Under these circumstances, it was error on the part of the court below to refuse the *res ipsa loquitur* instructions.

On remand, of course, there will again be three defendants. If trial is had with the case in the posture of having multiple defendants, it is probable that the evidence presented will be more extensive than what was adduced in the previous trial. Therefore, whether the doctrine of *res ipsa loquitur* will be applicable at the end of any new trial will depend upon the state of the evidence as it then exists. *See Guanzon v. Kalamau, supra.*

Reversed and remanded for further proceedings consistent herewith.

*Wayne D. Parsons (Greenstein & Parsons* of counsel) for plaintiffs-appellants.

*Albert Gould (John F. Zimmerman* on the brief) for appellee Security Corporation.

*David Waters (William C. McCorriston* on the brief, *Goodsill Anderson & Quinn* of counsel) for appellee Oahu Plumbing & Sheet Metal, Ltd. dba Sen Company.

*Richard Clifton (Jeffrey S. Portnoy* on the brief, *Cades Schutte Fleming & Wright* of counsel) for appellee Kumahira Safe Company.